IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIM FREEMAN,<br><br>            Plaintiff,<br><br>    v.<br><br>FRESENIUS KABI USA, LLC,<br><br>            Defendants. | No. 17 cv 4159<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

This discrimination and retaliation action under the Age Discrimination in Employment Act ("ADEA") arises out of Plaintiff's period of employment with Defendant. For the reasons stated herein, Defendant's Motion for Summary Judgment (Dkt. No. 21) is granted.

### I. BACKGROUND

Plaintiff Jim Freeman is 61 years old and resides in Cook County, Illinois. (Pl.'s Resp. to Def.'s Stmt. of Facts ("PSOF") ¶ 1, Dkt. No. 32.) Defendant Fresenius Kabi USA, LLC ("Fresenius") is a company that produces pharmaceuticals and medical devices. (PSOF ¶ 2.)

On February 1, 2016, Fresenius hired Freeman as a Warehouse Coordinator at its facility in Melrose Park, Illinois. (*Id.* ¶ 11.) Freeman was responsible for coordinating the delivery of raw materials throughout the company. (*Id.* ¶ 12.) Freeman reported to

Dave Shorter, a Warehouse Supervisor, who in turn was supervised by Kevin Knight, a Senior Materials Manager. (*Id*. ¶ 13.) On August 19, 2016, Fresenius fired Freeman, ostensibly for violating its attendance policy. (*Id*. ¶¶ 29-30.) The question at the heart of this dispute is whether Fesenius fired Freeman because of his excessive absences or because of his age. Therefore, a brief explanation off Fresenius's attendance policies is in order.

One policy at issue regards break timing. Warehouse Coordinators like Freeman work 12 and a half-hour shifts. (PSOF ¶ 11.) They receive a total of one hour of break time during their shift. (*Id*. ¶ 14.) By default, one hour is broken up into one 15-minute break in the morning, one 30-minute lunch break, and one 15-minute break in the afternoon. (*Id*. ¶ 14.) Employees may instead take one hour-long lunch break and skip their 15-minute breaks. (*Id*.) Freeman argues that, despite this policy, Shorter often did not allow him to use his breaks to his preference, while younger employers were allowed their preference of one-hour breaks. (*Id*. ¶ 15.)

Another policy mandates a "progressive discipline process" for when employees accumulate unexcused absences or tardy hours. The process consists of the following: employees receive a verbal warning after being absent for 41-48 hours; a written warning for 49-56 hours; and a final written warning and one-day unpaid suspension for exceeding 56 hours. (PSOF ¶ 3; Human Resources

Policy at 2, Ex. 6 to Pl.'s Stmt. of Add. Facts, Dkt. No. 33-6.) Once an employee has received a final written warning, any future absence can lead to termination of employment. (Human Resources Policy at 2.) However, the policy also states that Fresenius may "bypass any disciplinary step depending on management's review of the circumstances." (*Id.*)

The parties dispute the precise timing of Freeman's warnings under the progressive discipline policy. Freeman claims he received a verbal warning on July 14, 2016, after having accumulated only 40 hours of absent time. (PSOF ¶ 17). Fresenius asserts that Freeman's verbal warning took place on July 19, 2018, after he accumulated 48 hours of absent time. (*Id.*) Fresenius claims that by July 28, 2016, Freeman had accumulated 69.75 absent hours (Def.'s Resp. to Pl.'s Stmt. of Facts ("DSOF") ¶ 9, Dkt. No. 38.), and that on that day, Shorter met with Freeman and issued him a written warning that cautioned that any further absences would lead to termination. (PSOF ¶ 22.) Freeman denies that Shorter ever told him about the written warning. (*Id.* ¶ 22.)

Fresenius claims that by the time it fired Freeman, he had 76 unexcused hours absent. (PSOF ¶ 25.) Freeman disputes this number. However, the parties agree that by August 10, 2016, Freeman was over 56 hours—the cutoff for a final written warning. (*Id.* ¶ 27.) On that day, Shorter issued Freeman a final written warning, which included Shorter's recommendation that Freeman be fired. (*Id.*

3

¶ 26.) Fresenius did not suspended Freeman for one day without pay, which its written policy suggests should occur at the final written warning stage. (DSOF ¶ 13.) Regardless, on August 19, 2016, HR Specialist Kevin DeRue met with Freeman and told him he was fired, due to excessive hours of absence. (PSOF ¶ 30.)

In contrast, Freeman asserts that Fresenius fired him because he called Fresenius's Employee Hotline on August 6, 2016, and complained that Shorter was discriminating against him due to his age. (DSOF ¶ 5.) Freeman stated that Shorter allowed the younger employees their preference of breaks, but not him. (*Id.*) Fresenius denies that Freeman called the Hotline on August 6. (*Id.*) Freeman called the Hotline again on August 19, 2016, the day he was fired, and stated that he had been fired in retaliation for complaining about break times. (DSOF ¶ 8.)

Freeman filed suit against Fresenius under the ADEA, 29 U.S.C. § 621, *et seq.*, alleging: (1) discrimination on the basis of age; and (2) retaliation. Fresenius now moves for summary judgment on both counts.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party satisfies its burden,

4

the non-movant must present facts to show a genuine dispute exists to avoid summary judgment, which requires that she "do more than simply show that there is some metaphysical doubt as to the material facts." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004). When evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

### III.  DISCUSSION

#### A. Discrimination

The ADEA prohibits employers from firing employees, or otherwise discriminating against them, because they are 40 years old or older. 29 U.S.C. §§ 623(a), 631(a). Freeman argues that Fresenius discriminated against him on the basis of his age because he was terminated a week after his final written warning, without first receiving a one-day suspension or accumulating additional absences. Essentially, he claims that he should have been given a "final chance" to comply with the attendance policy, as was generally given to other, younger employees.

To prevail on his discrimination claim, Freeman must prove by a preponderance of the evidence that, but for his age, the adverse

5

employment action would not have occurred. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 719 (7th Cir. 2018). A plaintiff can satisfy this burden through two methods of proof: direct or indirect. *Id.* Freeman has chosen the indirect method, also referred to as the *McDonnell Douglas* burden shifting framework, which requires him to show evidence that: (1) he is a member of a protected class; (2) he was meeting Fresenius's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not members of his protected class were treated more favorably. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If Freeman establishes a prima facie case, the burden shifts to Fresenius to articulate a "legitimate, nondiscriminatory reason for the adverse employment action," at which point the burden shifts back to Freeman to show that Fresenius's explanation is pretextual. *Id.* at 719-20. At the summary judgment stage, the Court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action because of his age. *Id.* at 720; *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Fresenius does not dispute that Freeman's age rendered him a member of a protected class, nor does it dispute that his termination constitutes an adverse employment action. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (noting

6

that people 40 years old or older are members of a protected class under the ADEA); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) ("A termination is of course a materially adverse employment action."). Thus, only the second and fourth prongs of Freeman's prima facie case are at issue.

Regarding the second prong, Fresenius argues that Freeman was not meeting its legitimate expectations as an employer because he violated the attendance policy. Freeman asserts that he can bypass the second prong because he has evidence that Fresenius applied its attendance policy in a disparate manner. When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate expectations in a disparate manner (i.e., applied expectations to similarly situated younger employees in a more favorable manner), the second and fourth prongs merge, allowing the plaintiff to establish a prima facie case and proceed to the pretext inquiry. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010) (citing *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007)). The Court must examine Freeman's evidence to see if it is sufficient to raise such an inference. *Id*.

To support his disparate attendance policy application argument, Freeman points to ten comparable Fresenius employees under 40 years old ("the comparators"), and makes a variety of assertions about them, including: (1) they were not terminated for

7

missing the same or similar amount of hours as Freeman; (2) they received a written or final written warning for having attendance infractions similar to Freeman's; and (3) they were not terminated for excessive absence until receiving a verbal, written, and final written warning with a one-day suspension. The Court will refer to the individual comparators by last name: Branch, Johnson, Tillmon, Hollins, Jaime, Riggs, Ortiz, Ramon, Cutro, and Meyer.

Plaintiff notes that eight of the ten comparators received final written warnings and a one-day suspension before being fired, rather than being fired a week after a final written warning as Freeman was, for missing similar amounts: Branch (fired after missing 76 hours), Johnson (69.51 hours), Tillmon (80 hours), Hollins (72 hours), Riggs (180 hours), Ortiz (107.75 hours), Ramos (86 hours), and Cutro (108.75 hours). (DSOF ¶¶ 16-24.) Two comparators did not receive a final written warning and one-day suspension before being fired. Jamie received a verbal warning on an unknown date for having 48 absent hours, a written warning on May 19, 2015, for having 62 absent hours, and was fired for attendance reasons on June 3, 2015. (DSOF ¶ 20.) Meyer received a written warning on July 25, 2014 for having 11 call-off days, 5 vacation days, and at least 13 late days. She was fired on August 29, 2014 for attendance reasons. (DSOF ¶ 25.) All ten comparators were eventually terminated for attendance reasons. (*Id.*)

8

A few facts are disputed here. Fresenius asserts that Hollins never received a one-day suspension. And Fresenius claims Ortiz was 40 years old at the time of his firing, which would place him in the same protected class as Plaintiff, making him an inappropriate point of comparison for disparate application analysis. The Court will assume that Hollins received the suspension, and Ortiz was 39 at the time of his firing, as these facts would be most favorable to Freeman. *Scott*, 550 U.S. at 378.

The Court turns to the question of whether Freeman found similarly situated younger employees who were treated more favorably under the attendance policy. The similarly situated requirement "*normally* entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404-05 (7th Cir. 2007) (emphasis in original), *aff'd*, 553 U.S. 442 (2008). However, there is no "magic formula for determining whether someone is similarly situated," and courts should apply a "common-sense" factual inquiry—essentially, whether there are enough common features between the individuals to allow a "meaningful comparison." *Id*. at 405.

Freeman argues that he is similarly situated to the comparators because the same person—Claudia Mahecha, the Human

9

Resources Manager—had firing authority over all of them. (PSOF ¶¶ 8, 29.) *See Coleman v. Donahoe*, 667 F.3d 835, 848 (7th Cir. 2012) (holding that in the similarly situated analysis, whether employees were treated more favorably by the same decisionmaker is more important than whether they all had the same supervisor). Further, Freeman correctly points out that the comparators need not all have the same job to be similarly situated. *Id*. at 847. And the parties do not contest that all the comparators were subject to the same attendance policy as Freeman. *Id*.

However, there is insufficient evidence that the comparators engaged in conduct like Freeman's. Freeman's evidence essentially distills the comparators down to two facts: which of the three progressive discipline steps the employees received, and the number of absent hours they had accumulated by the time of their firing. But there was more to Freeman's employment than just the amount of hours he was absent. There are several undisputed occurrences of performance issues that go beyond merely being absent, including: arriving to work late; leaving early; "walking off" the job (leaving abruptly and without permission, before one's shift is over); and being insubordinate to his supervisor. On July 22, 2016, Freeman walked off after refusing to fill orders. (PSOF ¶ 18.) On July 28, 2016, he arrived one hour and fifteen minutes late for his shift. (PSOF ¶ 2.) Additionally, Freeman frequently took smoke breaks beyond his allotted break time. (PSOF ¶ 15.) On

10

August 6, 2016, after Shorter questioned him about taking an unauthorized smoke break before finishing a task, Freeman responded that Shorter would not "work [him] like a mule." (PSOF ¶ 24.) Freeman never returned from his lunch break that day. (*Id.*)

Additionally, Freeman accumulated 76 absent hours within a three-month period. (PSOF ¶¶ 16-24.) Freeman does not suggest that any of the comparators accumulated their absences that quickly. Comparing only the total number of hours absent, without examining the length of time it took an employee to accumulate those hours, is insufficient. The Seventh Circuit has held that the length of time over which disciplinary issues accumulate is "particularly relevant" to the similarly situated analysis:

> Length of service is particularly relevant if the comparison group is selected on the basis of the total number of reprimands received by each of the members regardless of length of service; a worker who received one reprimand in 10 years would not be comparable to a worker who had received one reprimand in one year.

*Crawford v. Indiana Harbor Belt R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006). Two workers with an identical number of absent hours might be very differently situated if those hours built up over different periods of time. *Id*. Therefore, Freeman's pure hours-based comparison is insufficient to demonstrate disparate treatment.

Freeman failed to present any evidence, or even allege, that any of the comparators exhibited similar behavior and still were

treated more favorably. Therefore, the Court cannot conduct a "meaningful comparison" between him and them. *Humphries*, 474 F.3d at 405. A plaintiff does not have to show that a comparator is "comparable to [him] in every respect." *Crawford*, 461 F.3d at 846. But because Freeman does not show that the comparators shared a "comparable set of failings" with him, his disparate treatment argument is untenable. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (citation omitted).

Indeed, the discipline records for the comparators serve to underscore Fresenius's argument, which is that every case is handled somewhat differently. Of the ten employees Freeman identified, only three—Hollins, Riggs, and Ortiz—received all three disciplinary steps outlined in the attendance policy (verbal warning, written warning, and final written warning including a one-day suspension). (DSOF ¶¶ 19, 21-22.) The rest received only partial steps within the progressive discipline policy. For example, Branch never received a verbal warning or first written warning. She only received a final written warning and one-day suspension on July 24, 2014, for having at least 76 absent hours. (DSOF ¶ 16.) She was fired for attendance reasons on March 17, 2016. (*Id*.) Johnson also was fired after receiving only a final written warning. (DSOF ¶ 17.) Jamie received a verbal and written warning, but was fired without first receiving a final written warning or one-day suspension. (DSOF ¶ 20.) Thus, the undisputed

12

facts show that Fresenius sometimes accelerated the discipline process without engaging in every step.

Ultimately, Freeman does not support any of his three theories of disparate application with sufficient evidence to raise an inference that Fresenius applied its attendance policies in a more favorable manner for younger workers. *See Montgomery*, 626 F.3d at 395. The Court therefore cannot merge the second and fourth prongs and proceed directly to the pretext inquiry. *See id.* at 394. And Freeman cannot establish the second prong of the indirect causation inquiry: meeting Fresenius's legitimate expectations. *Skiba*, 884 F.3d at 719. Freeman does not dispute that he exceeded 56 absent hours, which is grounds for termination under Fresenius's attendance policy. (PSOF ¶ 27.)

Therefore, Freeman fails to state a prima facie claim of age discrimination under the ADEA. A reasonable jury could not find that age was the but-for cause of Freeman's termination. *Skiba*, 884 F.3d at 720. The discrimination claim fails as a matter of law.

### B. Retaliation

Freeman contends that Fresenius unlawfully retaliated against him for complaining about age discrimination in his call to the Employee Hotline. The ADEA provides that it is "unlawful for an employer to discriminate against any of his employees… because such individual… has opposed any practice made unlawful by this

13

section." 29 U.S.C. § 623(d). To establish ADEA retaliation under the direct method of proof, Freeman must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the two. *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 657 (7th Cir. 2012). Alternatively, under the indirect method of proof, Freeman must show: (1) he engaged in statutorily protected activity; (2) he met Fresenius's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id*. at 657-58. Under either method, an employer must have actual knowledge of the employee's protected activity to state a claim for retaliation. *Id.* at 658.

Freeman asserts that he can demonstrate retaliation under both the direct and indirect method. However, as an initial matter, the Court finds that Freeman cannot establish retaliation under the indirect method, as the Court has already found that he failed to establish disparate policy application among similarly situated employees, and that he cannot otherwise establish that he met Fresenius's legitimate expectations. Thus, the Court turns to Freeman's arguments under the direct method.

The Court begins with the third element of the direct method—a causal link between the protected activity and adverse action—because it is dispositive. At summary judgment, a plaintiff must

14

offer evidence sufficient to create a genuine issue of material fact on whether their complaint caused their termination. *Castro*, 786 F.3d at 564. To establish the causal link, a plaintiff can rely on direct or circumstantial evidence. *Id*. Freeman does not claim he has any direct evidence of retaliation—i.e., there is no admission from a Fresenius agent that Freeman was fired because he complained about age discrimination. Instead, Freeman relies on circumstantial evidence, which typically includes: (1) evidence of suspicious timing, (2) evidence that similarly situated employees were treated differently, and (3) evidence that the employer's proffered reason for the adverse employment action was pretextual. *Id*. at 565.

Freeman points to the following timeline to establish causation: On August 6, 2016, Freeman called the Employee Hotline complaining about age discrimination based on Shorter's disparate application of the break policy. (DSOF ¶ 5.) Then, "within one to two weeks" of making that call, Freeman spoke with Kevin Knight, Shorter's supervisor, about Shorter forcing him to use his break time in a way that was not to his preference. (DSOF ¶ 6.) Thus, at a minimum, the conversation between Freeman and Knight happened on August 13, 2016. "The next day," (again, August 14, 2016, at the earliest) Freeman observed Knight speaking to Shorter—a conversation that Freeman assumes was about his complaint. (*Id*.) Then, some time "after" the meeting between Knight and Shorter,

15

Shorter held a meeting with his team, including Freeman, regarding a new break time policy. (DSOF ¶ 7.) After the meeting, Shorter told Freeman that "your days are numbered." (*Id.*)

Freeman's theory of causation is as follows: The meeting between Knight and Shorter evidences that Shorter knew about Freeman's complaint, importing actual knowledge to Shorter. Shorter's comment to Freeman evidences retaliatory intent. Fresenius's explanation for Freeman's firing was pretextual because "Shorter recommended termination for [Freeman] despite [him] only being at the final written warning stage… of [Fresenius's] progressive discipline policy." (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 14-15, Dkt. No. 31.) Thus, it appears that Freeman invokes both the suspicious timing and pretext bases for causation.

However, Freeman's theory does not withstand scrutiny. First, suspicious timing can "sometimes raise an inference of a casual connection," but it is "rarely sufficient" to establish causation. *Castro*, 786 F.3d at 565. In this case, temporal proximity alone is insufficient to suggest causation. The day that Freeman complained to the Employee Hotline, August 6, 2016, is the same day that Freeman took an unauthorized smoke break, fought with Shorter, and never returned to work after his lunch break—the precipitating event that Fresenius argues accelerated Freeman's termination. (PSOF ¶ 24.) The timing of events in this case is not "strongly

16

suggestive of retaliation" in the context of Freeman's job performance. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).

Second, the timeline is fatally flawed. Freeman claims that Shorter found out about Freeman's protected conduct on August 13, 2016, at the earliest. (DSOF ¶ 6.) Shorter's comment that Freeman's "days are numbered" took place on August 14, 2016, at the earliest. (DSOF ¶¶ 5-7.) But Shorter recommended Freeman's termination on August 10, 2016. (DSOF ¶ 11.) Thus, Shorter found out about the complaint, and made his comment, *after* he had already recommended termination. Freeman is therefore unable to show that Shorter was aware that Freeman complained of discrimination at the time he allegedly retaliated against Freeman. *See Smith*, 674 F.3d at 658. This lack of actual knowledge "dooms" his retaliation claim. *See id.; Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003) ("It is axiomatic that a plaintiff [must] engage in statutorily protected activity *before* an employer can retaliate against her for engaging in statutorily protected activity.") (emphasis added). The retaliation claim fails as a matter of law.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion for Summary Judgment (Dkt. No. 21) is granted as to Counts I and II.

**IT IS SO ORDERED.**

       Harry D. Leinenweber, Judge
       United States District Court

Dated: 5/10/2019